**Barbara ZUKOWSKI, etc., et al., Plaintiffs,**

v.

**HOWARD, NEEDLES, TAMMEN, and BERGENDOFF, INC., Defendant.**

**Civ. A. No. 85–K–2690.**

United States District Court, D. Colorado.

March 27, 1987.

---

**3.** *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

John G. Salmon, Denver, Colo., for Zukowski and Ruiz.

Dean R. Vanatta, Vanatta & Sullan, Denver, Colo., for Fidelity & Guar.

William H. Knapp, Knapp, Lee & York, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I.

### BACKGROUND

Plaintiff Maria Magdalena A De Ruiz is the widow of Arturo Ruiz. Co-plaintiff Barbara Zukowski is the wife of Charles Zukowski. Mr. Ruiz and Mr. Zukowski were construction workers who were involved in the construction of the Walnut Street Viaduct in Denver, Colorado. Mr. Ruiz died of injuries sustained on or about October 3, 1985, when a portion of the Walnut Street Viaduct, then under construction, collapsed. Mr. Zukowski sustained severe injuries as a result of the accident and has been under hospital care since that time.

Plaintiffs have filed individual complaints against defendant. Mrs. Zukowski's claims include all those filed by Mrs. Magdalena A De Ruiz. Mrs. Zukowski's insurance underwriter, Fidelity and Guaranty Insurance Underwriters, Inc., has joined the complaint and prays for a judgment against defendant in an amount sufficient to reimburse it for all past and future compensation, benefits, and expenses for which it has become liable to the Zukowski family.

Defendant Howard, Needles, Tammen and Bergendoff, a general partnership, is the consulting engineering firm which provided design services to the State of Colorado for construction of the Walnut Street Viaduct.

Diversity jurisdiction is asserted pursuant to 28 U.S.C. § 1332 and Colo.Rev.Stat. § 13–1–124, the Colorado Long Arm Statute. Before me now are defendant's motions for partial summary judgment. A more complete description of the case is contained in my March 9, 1987 order and memorandum opinion.

### II.

### DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Defendant has moved for partial summary judgment regarding certain claims made by plaintiffs. Because the motions for summary judgment involve the same claims and issues, I shall address each issue as it arises under its respective claim. I hasten to add this case is a negligence suit and cannot be construed as anything more.

### A. *The Breach of Contract Claim.*

Defendant contracted with the State of Colorado to perform certain services regarding the preparation of plans and specifications for the Walnut Street Viaduct. Plaintiffs allege defendants breached that contract by not adequately providing these services. According to plaintiffs, the nonperformance of these services ultimately was responsible for the collapse of the viaduct.

■ There is no allegation, however, of any contract existing between defendant and plaintiffs or Mr. Zukowski and Mr. Ruiz. Further, there is no allegation that plaintiffs or their husbands were express third-party beneficiaries to the contract between defendant and the State of Colorado.

A fundamental element of any breach of contract claim is the existence of a contract. Here, no such contract existed, and none is alleged. Thus, plaintiffs only possible theory under which they could sue for breach is a third-party beneficiary theory. The right of a third-party, in this case plaintiffs, to sue on a contract between other parties must be shown to exist in the express provisions of the contract and the right must be apparent. Also, the right to the third-party must not simply be "incidental" but must be directly intended. *See Gallagher v. Continental Insurance Company*, 502 F.2d 827 (10th Cir.1974) (where tunnel construction contract did not name plaintiff taxpayers, or any member of the general public, as promisees, where the contract was with the State of Colorado, not with the people of the state as individuals, and where plaintiffs only had an "incidental interest" at most, and thus did not have standing to sue for the nonperformance of the contract on the ground that they were third-party beneficiaries); *see also Brooks v. Land Drilling Company*, 564 F.Supp. 1518 (D.Colo.1983) (right of a third-party to sue on a contract made for their benefit requires the right be apparent from the express provisions of the contract; moreover, the benefit cannot be incidental but must be direct).

There is no basis in the instant case for the assertion of any claim founded upon the theory of third-party beneficiary. Construction workers on a viaduct construction project, like taxpayers who would use the viaduct, are not express or implied direct third-party beneficiaries to the contract between the State of Colorado and the defendant consulting engineering firm.

I recognize the intent to benefit the third-party *need not be expressly recited in the contract in order for the third-party to bring an action. Brooks, supra; Gallager, supra; E.B. Roberts Construction v. Concrete Contractors, Inc.*, 704 P.2d 859 (Colo.1985). The intent to benefit the third-party, however, must be apparent from the terms of the agreement, the surrounding circumstances, or both. *Id.* Such is not the case in this instance.

Plaintiffs are attempting to construe the general tort law concept of "duty of care", as a specific contractual obligation under the law of contracts via an implied third-party beneficiary theory. Such a construction is invalid. There never was any express or implied intent to make these workers "third-party beneficiaries" to the contract, although there may be a general duty to exercise a reasonable standard of care. In any event, the duty to exercise a reasonable standard of care is not simply interchangeable with the duty to benefit a third-party pursuant to a contract which has the intent to benefit a third-party. If they were interchangeable, then *any* tort necessarily and in every instance would become grounds to sue for breach of a contract provided the tortfeasor had an outstanding contract. Such is not the intent of contracts and third-party beneficiaries vis-a-vis tort law. That is to say, pure tort claims do not undergo a "metamorphosis" whereby they become contract claims simply because the alleged tortfeasor has an outstanding contract with a party other than the plaintiff suing in tort. It should be borne in mind by any pleader that third-party beneficiary liability is but a slender exception to the contractual requirement of privity and not an abdominous appendage to tort law.

Since there is no genuine issue of material fact, defendant is entitled to judgment as a matter of law. Accordingly, the motion for partial summary judgment is granted with respect to this claim.

### B. *The Outrageous Conduct Claim.*

Plaintiffs seek damages for defendant's conduct which is alleged to have caused severe emotional distress to plaintiffs and their families. In order to recover damages for emotional distress inflicted by "outrageous conduct", a claimant must

demonstrate the defendant's conduct was so outrageous in character, and extreme in degree, that it goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized society. *King v. Burris,* 588 F.Supp. 1152 (D.Colo.1984); *Bauer v. Southwest Denver Mental Health Center,* 701 P.2d 114 (Colo.App.1985). In *Brezinski v. F.W. Woolworth Co.,* 626 F.Supp. 240 (D.Colo. 1986), I dismissed a claim based upon alleged extreme and outrageous conduct where the plaintiff failed to allege a pattern of conduct *calculated to cause* emotional distress or a sufficiently egregious isolated incident. Again, the pleader should bear in mind that outrageous conduct is but a recently minted term for the tort of intentional infliction of mental suffering. It has its genesis in the intentional tort of assault, not negligence which is itself derived from the common law action for trespass on the case.

In *Brezinski, supra,* I set out the test found in *Rawson v. Sears,* 530 F.Supp. 776, 780 (D.Colo.1982).

> ... [T]here is a certain threshold level of conduct that must first be established for the plaintiff to state a cause of action for outrageous conduct. *Rawson.* To meet this threshold, plaintiff must allege that: (1) defendant has engaged in a pattern of conduct that was intended to cause or recklessly did cause severe emotional distress, or (2) if the incident is isolated, defendant blatantly and severely harassed plaintiff.

As stated earlier, this is a negligence suit. There is no virtue in pleading a profusion of claims for relief when the law provides a well-established and straight forward remedy. Indeed, the practice is inimical to the interests of plaintiff for at least two reasons. First, it delays prosecution of the case and increases costs because of the time spent in addressing motions such as those filed in this case. Second, it creates an expanded possibility for reversible error in the event the pleader is persistent or the trial judge is diffident. In the instant case, claims for relief based on negligence coupled with those for exemplary damages provide the remedies contemplated by established law.

■ There is no allegation in this case stating defendant *attempted* to have the viaduct collapse through faulty design, i.e., defendant engaged in a pattern of conduct *calculated to cause* emotional distress. Nor is there an allegation that defendant blatantly and severely harassed plaintiffs. Plaintiffs have failed to allege intent.

Colorado law on this issue is well-stated in Pringle, 1 *Colorado Law Annotated* 41, § 4 at 58:

> In order to recover on a claim of intentional infliction of emotional distress [by extreme and outrageous conduct], the plaintiff must establish by a preponderance of the evidence that the defendant engaged in outrageous conduct for the specific purpose and intent of causing severe emotional distress. Since one is held to have intended the known consequences of his acts, the intent requirement can be met by establishing that *the defendant knew his conduct was certain or substantially certain to cause emotional distress to the plaintiff.* Finally, since reckless conduct is equated with intentional action under the law of Colorado, the intent requirement can also be met by a showing that the defendant had facts in his possession by which he knew or should have known that his conduct would probably cause severe emotional distress to plaintiff, but nevertheless engaged in such conduct. These principles are set out in Colorado Jury Instruction (Civil) 2d 23:3 as follows:

> Intent to cause severe emotional distress exists when one engages in conduct with a desire to cause severe emotional; distress in another person, or when he knows his conduct is certain, or substantially certain to cause that result.

> One whose conduct causes severe emotional distress in another person has acted recklessly if at the time he acted he knew, or as a reasonable person he had reason to know because of other facts which he did know, that there was a substantial probability that his conduct

would cause severe emotional distress in another.

The Colorado Court of Appeals has clearly held that *allegations of negligent conduct are insufficient to state a claim for relief for intentional infliction of emotional distress by outrageous conduct. First Nat. Bank v. Collins,* (1980) 44 Colo.App. 228, 616 P.2d 154. (emphasis added).

Since there is no genuine issue of material fact, and since there is no conduct alleged necessary to establish a claim for outrageous conduct, judgment as a matter of law is appropriate. Accordingly, defendant's motion for summary judgment with respect to this claim is granted.

#### C. *Loss of Parental Consortium.*

Mrs. Zukowski's claim for loss of parental consortium has been dropped because such a claim is not recognized in Colorado. *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986) (holding Colorado law does not recognize a child's claim for loss of companionship and support of an injured parent).

#### D. *Punitive Damages.*

 Whether punitive damages should be assessed in this case is a decision for the jury to make and is thus improper to dispose of on a motion for summary judgment. Accordingly, defendant's motion for partial summary judgment with respect to punitive damages is denied.

#### E. *Status of Discovery.*

Plaintiffs argue the granting of summary judgment on their claims would be, at this point, premature since discovery has not been completed (certain witnesses have not yet been deposed). No admissions, however, would change the granting of summary judgment on these issues short of an admission of an intent to collapse the viaduct or an admission defendant assumed certain implied contractual duties to plaintiffs and their husbands as direct third-party beneficiaries. If such admissions are made then a motion to amend would be available.

IT IS THEREFORE ORDERED THAT:

1. Defendant's motion for partial summary judgment is granted with respect to the breach of contract claims, the outrageous conduct claims, and the loss of parental consortium claim.

2. Defendant's motion for partial summary judgment is denied with respect to the punitive damages claim.

3. The pre-trial order previously entered shall be amended accordingly.